UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
NOV - 5 2026
ANDREW W. MOELLER, CLERK
WESTERN DISTRICT OF NY

CARLO ROBERT D'ANGELO,

Plaintiff,

v.

24-CV-298 (JLS)

ERIE COUNTY SHERIFF'S OFFICE, JOHN/JANE DOE ERIE COUNTY SHERIFF'S OFFICERS ##1-3, and NIAGARA RADISSON HOTEL, GRAND ISLAND,

Defendants.[1]

## DECISION AND ORDER

*Pro se* Plaintiff Carlo Robert D'Angelo has filed this action seeking relief under 42 U.S.C. § 1983 arising from a June 16, 2021 encounter with law enforcement. Dkt. 1.[2] D'Angelo has paid the filing fee. Because D'Angelo was a prisoner, as defined in 28 U.S.C. § 1915A(c), at the time he commenced this action, the Court has screened the complaint, Dkt. 1, as supplemented, Dkt. 6,[3] pursuant to 28 U.S.C. § 1915A(b). *See* 28 U.S.C. § 1915(h); *Gibson v. City Municipality of N.Y.*,

---

[1] The Clerk of Court is directed to amend the caption as it appears above.

[2] Contemporaneously with the filing of this action, D'Angelo filed five other actions in this District.

[3] More than a month after initiating this action, D'Angelo filed an "Additional Claim," Dkt. 6, which the Court has treated as a supplement to the complaint.

692 F.3d 198, 201 (2d Cir. 2012) ("[T]he relevant time at which a person must be 'a prisoner' within the meaning of the [Prison Litigation Reform Act] in order for the Act's restrictions to apply is 'the moment the plaintiff files his complaint.'" (citation omitted)).[4]

For the reasons below, D'Angelo's excessive force, false arrest, unlawful search and seizure claim arising from the search of his hotel room, and his failure to intervene claims, may proceed to service against the three John/Jane Doe Erie County Sheriff's Officers in their individual capacities. He may replead his claims against the Radisson Hotel and the three John/Jane Doe Erie County Sheriff's Officers in their official capacities. He may also replead his unlawful search and seizure claim arising from the search of his vehicle. His claims against the Erie County Sheriff's Office and his request to suppress evidence in his criminal proceeding (21-CR-80 (W.D.N.Y.)), are dismissed without leave to amend.

## DISCUSSION

## I. LEGAL STANDARDS

### A. Review Under the IFP Statutes

A court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental

---

[4] Because D'Angelo was released from custody after he instituted this action, the Court directed D'Angelo to refile his motion to proceed *in forma pauperis* in this case (Dkt. 8) and each of his other cases, which the Court denied upon filing because he did not show sufficient *indicia* of indigency (Dkt. 11). D'Angelo thereafter paid the filing and administrative fees in this case and three others.

entity, if the court determines the action "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

### B. Pleading Standards

In evaluating a complaint, the court must "accept all of the facts alleged in the complaint as true and draw all inferences in the plaintiff's favor." *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a *pro se* complaint must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint states a claim for relief if the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, although a *pro se* complaint need not provide every last detail in support of a claim, it must contain sufficient factual allegations to nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. *See Komatsu v. Cubesmart, Daniels Norelli Cecere & Tavel PC*, No. 20-3676-CV, 2021 WL 6060603, at *1 (2d Cir. Dec. 20, 2021) (summary order) (to avoid *sua sponte* dismissal under

the IFP statute, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face'" (quoting *Twombly*, 550 U.S. at 570)); *Scott Phillip Lewis v. R.L. Vallee, Inc., d.b.a. Maplefield's*, No. 24-1438, 2025 WL 1077412, at *1 (2d Cir. Apr. 10, 2025) (summary order) (same).

The Court's liberal pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint fails to state a claim if it supplies only "labels and conclusions," *Twombly*, 550 U.S. at 555, "a formulaic recitation of the elements of a cause of action," *id.*, or "'naked assertions' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Although a court is "obligated to draw the most favorable inferences that [a plaintiff]'s complaint supports, [it] cannot invent factual allegations that he [or she] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

### C. Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff "must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established

elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under Section 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a Section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). There is "no special rule for supervisory liability." *Tangreti v. Bachmann,* 983 F.3d 609, 618 (2d Cir. 2020). Rather, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676).

**D. Leave to Amend**

Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, unless it "can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999)). But a court may deny leave to amend pleadings when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend.").

## II. ALLEGATIONS

A liberal reading of the complaint tells the following story. On June 16, 2021, D'Angelo arrived at the Niagara Radisson Hotel in Grand Island, New York ("Radisson Hotel"). Dkt. 1 at 11. He parked his vehicle in the hotel's roundabout and took boxes to his room. *Id.* While his vehicle remained parked in the roundabout, he "laid down" in his room to "rest for a moment." *Id.*

D'Angelo woke up "panick[ed] and confus[ed] as three Erie County Sheriff[']s [Officers]" had entered his room and explained that "the Radisson [Hotel] called them for a welfare check because [he] left [his] car parked in the roundabout." *Id.* The Sheriff's Officers further explained that they came to his room and heard him snoring before being given access to the room by hotel management. *Id.* at 12; Dkt. 6 at 1.

The three John/Jane Doe Erie County Sheriff's Officers had handcuffed D'Angelo while he was sleeping naked in his bed because they observed "science equipment among [his] personal affects." Dkt. 1 at 11; Dkt. 6 at 1. Nothing in D'Angelo's hotel room "was illegal under the Erie County Sheriff[']s jurisdiction, or N.Y.S. Penal Code." Dkt. 1 at 11.

When D'Angelo "got up to see if [he] could spot [his] vehicle from the balcony window," he was "tased by two of the Sheriffs simultaneously." *Id.*; Dkt. 6 at 1. Although he was handcuffed, naked, and unable to breathe, D'Angelo was "repeatedly tased." Dkt. 1 at 11.

Wearing only his boxer shorts, D'Angelo was taken by ambulance to the Erie County Medical Center ("ECMC") where he was "forced to undergo 24 hours of observation." *Id.* at 12.

At some point, D'Angelo's vehicle was moved from the roundabout to the Radisson Hotel's parking lot, and it was "rummaged through by individuals, Miranda Bova and others." *Id.* "Tools were stolen and [his] car was torn apart." *Id.* The evidence seized was "used . . . to build a federal case against [him]." *Id.* at 13.

D'Angelo appears to assert claims of excessive force, false arrest, illegal search and seizure, and failure to intervene. The three John/Jane Doe Erie County Sheriff's Officers are sued in their official and individual capacities. *Id.* at 2. D'Angelo seeks monetary damages and "the suppression of evidence obtained from the unreasonable search and . . . seizure . . . be applied to" to his federal criminal case. *Id.* at 5.

## III. ANALYSIS

### A. State Action

The absence of any allegations suggesting that the Radisson Hotel was acting under color of state law is fatal to the Section 1983 claims against it.

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)). There are some circumstances

where the actions of a private entity can be said to be "state action" for the purposes of Section 1983. *Id.* at 206-07. The Second Circuit has "identified three 'main tests'" to determine when private action may be regarded as state action:

> (1) when the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); [and] (3) when the entity has been delegated a public function by the state ('the public function test').

*Barrows v. Becerra*, 24 F.4th 116, 135 (2d Cir. 2022) (alteration in original) (quoting *Fabrikant*, 691 F.3d at 207).

Nothing alleged in the complaint suggests that the Radisson Hotel was engaged in state action under any of these tests. D'Angelo faults the management of the Radisson Hotel for calling the police, rather than having his car towed. Dkt. 1 at 12. Even if the management of the Radisson Hotel falsely reported to law enforcement that a welfare check was necessary, these allegations are insufficient to state a claim against the hotel. *See Moritz v. Town of Warwick*, No. 15-CV-5424 (NSR), 2016 WL 3248494, at *3 (S.D.N.Y. June 9, 2016) ("[T]he provision of false statements by a private actor to law enforcement personnel, standing alone, is insufficient to establish [Section] 1983 liability[.]" (collecting cases)); *Young v. Suffolk County*, 705 F. Supp. 2d 183, 196 (E.D.N.Y. 2010) ("The provision of information to or summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of [Section] 1983." (collecting cases)); *Meadows*

*v. Buffalo Police Dep't*, 21-CV-449-LJV-HKS, 2024 WL 1142092, at *17 (W.D.N.Y. Mar. 14, 2024) (same).

D'Angelo's claims against the Radisson Hotel are, therefore, subject to dismissal. In light of his *pro se* status, *see Cuoco*, 222 F.3d at 112, D'Angelo may amend his complaint to allege specific facts showing that the Radisson Hotel was acting under color of state law.

**B. *Monell* Liability**

D'Angelo names the Erie County Sheriff's Office as a defendant, but, as an arm of Erie County, it does not have a legal identity separate and apart from the County, and thus cannot be sued. *See Haynes v. Acquino*, No. 10-CV-0355S(F), 2010 WL 11546024, at *2 (W.D.N.Y. July 7, 2010) (finding that the "Erie County Sheriff's Department" was an arm of Erie County and did "not have [a] legal identit[y] separate and apart from the . . . County that [it is] a part, and thus cannot be sued"). To the extent D'Angelo names the three John/Jane Doe Erie County Sheriff's Officers as defendants in their official capacities, it is functionally equivalent to a suit against their employer—Erie County.

A municipality such as Erie County cannot be held liable under Section 1983 unless the challenged action was undertaken pursuant to a municipal policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To state such a claim, a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v.*

*Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

An official policy or custom can be established by showing:

> (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.

*Kurmangaliyev v. City of New York*, 22-CV-5656 (LDH), 2023 WL 8654023, at *2 (E.D.N.Y. Dec. 14, 2023) (citing cases).

The complaint, however, does not allege any facts suggesting that D'Angelo's rights were violated pursuant to a policy or custom of Erie County. *See generally* ECF No. 1. D'Angelo, therefore, has failed to state a viable claim of municipal liability, and his official capacity claims against the three John/Jane Doe Erie County Sheriff's Officers are dismissed, but he may amend his complaint to allege facts showing that his constitutional rights were violated pursuant to a municipal policy or custom as set forth above.

### C. False Arrest[5]

The seizure here is not alleged to have resulted in an arrest, but rather an involuntary hospital commitment for 24 hours. Dkt. 1 at 12. As alleged, D'Angelo's

---

[5] D'Angelo appears to raise this as a Fifth Amendment claim, but "[s]tate officials cannot be sued under the Fifth Amendment to the federal Constitution for false arrest." *Harvey v. Corneal*, No. 24-CV-7380 (JAV), 2025 WL 2345879, at *4 (S.D.N.Y. Aug. 13, 2025).

seizure appears to have been pursuant to New York Mental Hygiene Law § 9.41, which permits a law enforcement officer to "take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others." N.Y. Mental Hygiene L. § 9.41.

Consequently, "in the context of an involuntary hospitalization, a seizure passes scrutiny under the Fourth Amendment, if it is based upon probable cause, meaning that there are reasonable grounds for believing that the person seized is dangerous to himself or others." *Barkai v. Mendez*, No. 21-CV-4050 (KMK), 2024 WL 811561, at *15 (S.D.N.Y. Feb. 21, 2024) (citation modified); *Hussey v. Beth Israel Med. Ctr.*, No. 23-CV-4375 (LTS), 2023 WL 5612392, at *3 (S.D.N.Y. Aug. 28, 2023) ("Probable cause to believe that the criteria for a mental health arrest under Section 9.41 has been met is a defense to a false arrest claim arising from such an arrest." (citing, *inter alia*, *Kerman v. City of New York*, 261 F.3d 229, 235 n.8 (2d Cir. 2001)). "To determine whether probable cause existed to justify a mental health seizure, courts must look to 'the specific observations and information available' at the time of the seizure." *Barkai*, 2024 WL 811561, at *16 (citation omitted).

D'Angelo was allegedly in his hotel room sleeping when he was taken into custody. Nothing alleged suggests that law enforcement had probable cause to believe that he was a threat to himself or others. At this stage, these allegations

are sufficient to state a claim that may proceed to service against the three John/Jane Doe Erie County Sheriff's Officers.[6]

### D. Excessive Force

The Supreme Court has held that, where a claim for excessive force "arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment[.]" *Graham v. Connor,* 490 U.S. 386, 394 (1989). An arrestee's excessive force claim "is therefore analyzed under the Fourth Amendment's 'reasonableness' standard, rather than under the subjective 'substantive due process' approach[.]" *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019) (quoting *Graham*, 490 U.S. at 396-97).

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* (quoting *Graham*, 490 U.S. at 396). Determining "whether the amount of force an officer used is reasonable 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.* (quoting *Graham*, 490 U.S. at 396). Consequently, "a government officer may not intrude on a person's Fourth Amendment rights by employing a degree of force beyond that which is warranted by the objective circumstances of an arrest" or a detention. *Id.*

---

[6] This does not, however, prejudice Defendants' ability to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or a motion for summary judgment pursuant to Fed. R. Civ. P. 56.

In making this determination, courts look to the following factors:

> (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect posed an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight, (4) the need for the application of force, (5) the relationship between the need and the amount of force that was used, (6) the extent of the injury inflicted, and (7) whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Linton v. Zorn*, 135 F.4th 19, 31 (2d Cir. 2025) (citation modified).

D'Angelo's allegations that he was tasered repeatedly while handcuffed and not posing a threat are sufficient to state a colorable excessive force claim. This claim may, therefore, proceed to service against the three John/Jane Doe Erie County Sheriff's Officers.

### E. Search and Seizure

D'Angelo alleges that the three John/Jane Doe Erie County Sheriff's Officers entered his hotel room without exigent circumstances, consent, or a warrant. Dkt. 1 at 11. He also alleges that his vehicle was "rummaged through" and that they "stole [$5,000] in equipment and other possessions . . . without so much as . . . a receipt." *Id.* at 12, 13. According to D'Angelo, the "evidence seized [was also used] to build a federal case against [him]." *Id.* at 13.

"Warrantless searches are '*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions,' including, relevant here, consent and exigent circumstances." *United States v. Harris*, No. S2 24 CR. 541 (PAE), 2025 WL 1078390, at *7 (S.D.N.Y. Apr. 10, 2025) (quoting *United States v. Navas*, 597 F.3d 492, 497 (2d Cir. 2010)). As

alleged, the three John/Jane Doe Erie County Sheriff's Officers had neither consent nor exigent circumstances to enter D'Angelo's hotel room. This claim may, therefore, proceed to service against the three John/Jane Doe Erie County Sheriff's Officers.

However, D'Angelo's Fourth Amendment claim arising from the search of his vehicle and the seizure of items therein may not proceed to service. The complaint fails to identify any named defendant with personal involvement in the search of his vehicle. D'Angelo alleges only that an "unknown entity" moved his vehicle to the Radisson Hotel's parking lot and that "Miranda Bova", who is not named as a defendant and has no alleged nexus to either the Radisson Hotel or Erie County Sheriff's Office, and other unidentified "individuals," "rummaged through" his vehicle. Dkt. 1 at 12. This portion of D'Angelo's Fourth Amendment claim is, therefore, dismissed, but with leave to amend to identify the defendants with personal involvement in the search and seizure of items from the vehicle.

At least some of the relief sought by D'Angelo in connection with this claim is also subject to dismissal. D'Angelo was previously charged in this Court with, *inter alia*, possession of alpha-pyrrolidinopentiophenone ("α-PVP") on May 25, 2021, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). *United States v. D'Angelo*, 21-CR-0080-JLS-MJR-5 ("21-CR-80"). He pleaded guilty to possession of α-PVP on October 8, 2024, and was sentenced to time-served and five years of supervised release. *See* 21-CR-80, Dkts. 216 (Plea Agreement), 217 (Minute Entry of the Plea Hearing), 249 (Minute Entry for Sentencing Hearing), and 250 (Judgment). After

his sentencing, he filed a Notice of Appeal, which he later withdrew. *See* 21-CR-80, Dkts. 252, 297.

Among the relief D'Angelo seeks is "the suppression of evidence obtained from the unreasonable search and unreasonable seizure . . . be applied to [his] 21-CR-80 case." Dkt. 1 at 5. This is not relief available in a Section 1983 action and is, therefore, dismissed without leave to amend. *See Foley v. Landgraf*, No. 12-CV-01000, 2013 WL 1352160, at *2 (E.D. Wis. Apr. 2, 2013) ("Plaintiff may not use a federal [Section] 1983 action to suppress evidence in his state court cases[.]").[7]

**F. Failure to Intervene**

D'Angelo asserts a failure to intervene claim contending that "[o]ne of the [Sheriff's] [O]fficers should have intervened" in the constitutional violations. Dkt. 6 at 1.

It is widely recognized that "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d

---

[7] D'Angelo's Fourth Amendment unlawful search and seizure claim may ultimately be barred in its entirety by *Heck v. Humphrey*, 512 U.S. 477 (1994). If "a judgment in favor of the plaintiff [in the § 1983 action] would necessarily imply the invalidity of his conviction or sentence," *Heck* bars the claim "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. Importantly, "a federal court's finding of a Fourth Amendment violation would not necessarily imply that a prior state conviction was unlawful if, despite the constitutional violation, the subject evidence was admissible based on such doctrines as independent source, inevitable discovery, and harmless error." *Williams v. Ontario Cnty. Sheriff's Dep't*, 662 F. Supp. 2d 321, 329 (W.D.N.Y. 2009) (citing *Heck*, 512 U.S. at 487 n.7). Based on the limited record before the Court, it is premature to resolve this question now.

552, 557 (2d Cir. 1994). Liability attaches on the theory that the officers, by failing to intervene, become "tacit collaborator[s] in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016).

To state a failure to intervene claim, a plaintiff must plausibly allege that: "(1) the officer had a realistic opportunity to intervene to prevent the harm; (2) a reasonable person in the officer's position would have known that the victim's constitutional rights were being violated; and (3) the officer did not take reasonable steps to intervene." *Gochnour v. Burri*, 6:15-CV-06174 EAW, 2018 WL 10944594, at *3 (W.D.N.Y. July 9, 2018).

Although law enforcement officers may not be held liable in a Section 1983 action for failure to intervene where they are liable under a direct theory of participation, plaintiffs are permitted to plead in the alternative. *See Cornell v. Village of Clayton*, 691 F. Supp. 3d 608, 622 (N.D.N.Y. Sept. 13, 2023); *Boehner v. City of Rochester*, 609 F. Supp. 3d 220, 231 (W.D.N.Y. 2022). At this stage, D'Angelo has sufficiently alleged an alternative claim against the three John/Jane Doe Sheriff's Officers for failure to intervene in his false arrest and the use of excessive force.

## IV. REQUEST FOR APPOINTMENT OF COUNSEL

D'Angelo requests "assigned counsel to represent [him] based on the complexity of [his] claim." Dkt. 1 at 13.

There is no constitutional right to appointed counsel in civil cases. Under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants. *See,*

*e.g.*, *Sears, Roebuck & Co. v. Charles Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988). The assignment of counsel in civil cases is within the trial court's discretion. *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984). In determining whether to assign counsel, courts must "first determine whether the indigent's position seems likely to be of substance," and then, if this threshold is met, consider

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986). At this stage, the factors do not support D'Angelo's request. It is, therefore, denied without prejudice to renewal at later stage.

## CONCLUSION

For the reasons above, D'Angelo's excessive force, false arrest, unlawful search and seizure claims arising from the search of his hotel room, and failure to intervene claims may proceed to service against the three John/Jane Doe Erie County Sheriff's Officers in their individual capacities. He may replead his claims against the Radisson Hotel and the three John/Jane Doe Erie County Sheriff's Officers in their official capacities. He may also replead his unlawful search and seizure claim arising from the search of his vehicle. His claims against the Erie County Sheriff's Office and his request to suppress evidence in his criminal proceeding (21-CR-80) are dismissed without leave to amend. D'Angelo's request for

appointment of counsel is likewise denied without prejudice to renewal at later stage.

D'Angelo may file an amended complaint as directed above by **December 21, 2026,** in which he includes the necessary allegations as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

D'Angelo is advised that an amended complaint **completely replaces** the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Therefore, any amended complaint must include all allegations against each Defendant so that the amended complaint stands alone as the only complaint in this action.

D'Angelo is further advised that he has been granted leave to amend only those claims addressed above—namely, his claims against the Radisson Hotel and the three John/Jane Doe Erie County Sheriff's Officers in their official capacity, as well as his unlawful search and seizure claim arising from the search of his vehicle. A district court has the inherent authority to dismiss claims that exceed the scope of the court's order granting leave to amend. *See Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order) (collecting cases).

**ORDER**

IT HEREBY IS ORDERED that D'Angelo's request for appointment of counsel is denied without prejudice to renewal; and it is further

ORDERED that D'Angelo's excessive force, false arrest, unlawful search and seizure claim arising from the search of his hotel room, and failure to intervene

claims may proceed to service against the three John/Jane Doe Erie County Sheriff's Officers; and it is further

ORDERED that D'Angelo's claims against the Erie County Sheriff's Office are dismissed without leave to amend, and the Clerk of Court is directed to terminate this Defendant from the action; and it is further

ORDERED that D'Angelo's request to suppress evidence in his criminal case (21-CR-80) is dismissed without leave to amend; and it is further

ORDERED that D'Angelo's remaining claims—namely, his claims against the Niagara Radisson Hotel, Grand Island and the three John/Jane Doe Erie County Sheriff's Officers in their official capacities, as well as his unlawful search and seizure claim arising from the search of his vehicle—are dismissed under 28 U.S.C. § 1915A(b)(1) for failure to state a claim, but with leave to amend; and it is further

ORDERED that D'Angelo may file an amended complaint as directed above by no later than **December 21, 2026**; and it is further

ORDERED that the Clerk of the Court shall send to D'Angelo with this order a copy of the original complaint, a blank Section 1983 complaint form, the instructions for preparing an amended complaint, and notice regarding service of summons and complaint with attached request for service by the United States Marshals Service;[8] and it is further

---

[8] If D'Angelo files an amended complaint, the issuance of summonses and service of the amended complaint will be deferred until the amended complaint is screened.

ORDERED that in the event D'Angelo does not file an amended complaint by the deadline set forth above, summonses shall be issued and D'Angelo shall arrange for service of the summons, complaint, and this Decision and Order on the three John/Jane Doe Erie County Sheriff's Officers (once identified) or file a motion requesting service on these Defendants by the United States Marshals Service;[9] and it is further

ORDERED that pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (1997) (per curiam) the Erie County Attorney is requested to ascertain the full name, with correct spelling of the three John/Jane Doe Erie County Sheriff's Officers involved in the June 16, 2021 encounter with D'Angelo. The Erie County Attorney need not undertake to defend or indemnify this individual at this time. Rather, this Order merely provides a means by which Plaintiff may name and properly serve this defendant, as instructed by the Second Circuit in *Valentin*.

---

[9] Because D'Angelo paid the filing fee, it is his responsibility to arrange for service of the summons and complaint or amended complaint upon the three John/Jane Doe Erie County Sheriff's Officers once the summonses are issued as outlined above. He may file a motion seeking permission from the Court to have the United States Marshals Service serve the summons and complaint or amended complaint upon Defendants. An application to request the United States Marshals Service to serve the summons and complaint or amended complaint is attached to the notice regarding service of summons and complaint, which is being forwarded to D'Angelo along with this Order. Service by the United States Marshals Service is not mandatory and if D'Angelo wants the United States Marshals Service to serve the summons and complaint or amended complaint, he must file a written request for such service and pay the requisite fee of $8.00 per summons and complaint. *See* Fed. R. Civ. P. 4(c)(3).

The Erie County Attorney shall produce the information specified above by mail (*Pro Se* Litigation Unit, United States District Court, Robert H. Jackson United States Courthouse, 2 Niagara Square, Buffalo, New York 14202) within 30 days of the date of this Decision and Order. Upon receipt of this information, the Clerk of the Court shall amend the caption of this action to reflect the full names of these defendants; and it is further

ORDERED that the Clerk of the Court shall forward a copy of this Decision and Order and the complaint by email to Jeremy C. Toth, at Jeremy.Toth@erie.gov; and it is further

ORDERED that, upon service, pursuant to 42 U.S.C. § 1997e(g)(2), the three John/Jane Doe Erie County Sheriff's Officers, once identified, shall answer or respond to the remaining claim(s) of the complaint; and it is further

ORDERED that pursuant to Western District of New York Local Rule of Civil Procedure 5.2(d), D'Angelo must immediately notify the Court in writing each time his address changes. Failure to do so may result in dismissal of the action with prejudice.

SO ORDERED.

Dated: November 5, 2026
Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE